**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION**

In re:

    JEFFREY S. WELLER and
    KAREN L. WELLER,

              Debtors.

Chapter 13
Case No. 12-40418-HJB

## MEMORANDUM OF DECISION

Before the Court is the "Objection to Debtor's First Amended Chapter 13 Plan [Docket No. 45]" (the "Plan Objection"), filed by Wells Fargo Financial Massachusetts, Inc. ("Wells Fargo"). By its Plan Objection, Wells Fargo complains that the plan proposed by these debtors seeks to vest real property in Wells Fargo, as mortgagee, without the consent of Wells Fargo. This forced vesting, according to Wells Fargo, is contrary to the requirements of § 1325(a)(5) of the Bankruptcy Code,[1] and renders the proposed plan unconfirmable. Not surprisingly, the debtors, Jeffrey S. Weller and Karen L. Weller (the "Debtors"), disagree. According to the Debtors, § 1322(b)(9) allows them to vest title in a secured creditor, whether or not that creditor objects.

The fact that this forced vesting issue has arisen, and is the subject of so much recent debate, is a sad commentary on the times. Historically, Chapter 13 was considered the preferred chapter for debtors wishing to retain their homes. Now, after

---

[1] See 11 U.S.C. §§101 et seq. All reference to statutory sections are to the Bankruptcy Code unless otherwise specified.

1

the crash of the real estate market and the occasional reticence of mortgagees to foreclose their mortgages on properties in which debtors have no interest of retention (or at least to conduct those foreclosures quickly), these Chapter 13 Debtors, and others like them, seek to free themselves from the expenses and burdens of "underwater" real estate.

I. <u>FACTS AND TRAVEL OF THE CASE</u>

The subject property is a single family home located in Lunenburg, Massachusetts (the "Property"). The Debtors' Schedule A reflects that, as of the February 7, 2012 petition date, the Debtors valued the property at $139,000. The Debtors' Schedule D reflects a secured claim held by Wells Fargo in the amount of $258,083.97. The Debtors vacated the Property shortly after the bankruptcy case was filed.

The Debtors' original Chapter 13 plan (the "Confirmed Plan") was confirmed on June 1, 2012, and provided that:

> The secured claim of Wells Fargo Financial ("First Mortgagee") is being modified as follows: Debtors are *surrendering* the property located at 37 Graham Street, Lunenburg, Massachusetts in full satisfaction of the secured claims. The First Mortgagee shall be allowed an unsecured claim for the deficiency balance owed. The Debtors are surrendering the primary residence located at 37 Graham Street, Lunenburg, Massachusetts to Wells Fargo and/or any successors and assigns and *will foreclose* on the property in full satisfaction of the mortgage, note and any outstanding fees.
>
> [Emphasis added].

Wells Fargo apparently did not find the invitation to foreclose enticing. It did not seek relief from the automatic stay, nor did it take any other action with respect to the Property.

And so the case proceeded for three (3) years after confirmation. The Debtors continued to make their plan payments, but nothing happened with respect to the Property.

The Debtors represent that, due to Ms. Weller's medical condition and reduced ability to work, they are now no longer able to pay for maintenance and insurance for the Property.[2] Wishing to relieve themselves of the burden of maintaining and insuring the Property, the Debtors decided to take another approach. On August 5, 2015, the Debtors filed their First Post-Confirmation Amended Chapter 13 Plan (the "Proposed Amended Plan"), with a notable change in the treatment of the Wells Fargo claim. Now the Debtors propose that title to the Property vest in Wells Fargo upon confirmation of the Proposed Amended Plan. The Proposed Amended Plan provides that:

> Pursuant to §§1322(b)(8) and (9), title to the property located at 37 Graham Street, Lunenburg, MA 01462 *shall vest* in Wells Fargo Financial Massachusetts, Inc. and/or any successors and assigns upon confirmation, and *the Confirmation Order shall constitute a deed of conveyance* of the property when recorded at the registry of Deeds.
>
> [Emphasis added].

Wells Fargo filed the Plan Objection to challenge this revised treatment. Hearings were held before this Court on December 8, 2015 and December 9, 2015, and the Court took the matter under advisement.

---

[2] After the Plan Objection was taken under advisement, the Chapter 13 trustee filed a "Motion of Chapter 13 Trustee For Order Dismissing Case" (the "Motion to Dismiss"), seeking to dismiss this case on the basis that the Debtors have failed to maintain insurance on the Property. As of the date of this Memorandum of Decision, the Motion to Dismiss is pending and has been scheduled for hearing.

II.     DISCUSSION

This is not the first time that the issue of forced vesting has arisen.  Nor is it the first time the issue has arisen before this Court.  In re Cormier, 434 B.R. 222 (Bankr. D. Mass. 2010).  In Cormier, the Court held that a secured creditor could not be compelled, under Massachusetts law or the Bankruptcy Code, to take title to a property that the debtors proposed to surrender pursuant to their Chapter 13 plan.  Id.

In Cormier, the debtors had the same goal: to transfer ownership of mortgaged property, and the associated expenses, to the secured creditor.  Id. at 225.  The Debtors in this case say that Cormier is distinguishable because, in Cormier, the debtors did not argue that the involuntary transfer was authorized by Section 1322(b)(9).  That is true.  In Cormier, the debtors argued that Section 1325(a)(5)(C) permitted them to surrender collateral in satisfaction of a secured claim without the secured creditor's consent.  Id. at 226.  And, importantly, the debtors in the Cormier matter went one step further; they argued that the Court should compel the secured creditor to "accept" their surrender by taking a deed-in-lieu, taking immediate possession, or foreclosing.  Id.  Thus, the decision in Cormier hinged upon the meaning of "surrender" as set forth in § 1325(a)(5)(C).  This Court found that a debtor complies with the "surrender" requirement of § 1325(a)(5)(C) by ceding the debtor's rights and making such property available to the creditor, but "what a creditor then does, or doesn't do, with that property is left to the creditor's discretion under non-bankruptcy law."  Id. at 229; see also, Bank of New York Mellon v. Watt, 2015 WL 1879680, *4 (D. Or.); Arsenault v. JP Morgan Chase Bank, N.A. (In re Arsenault), 456 B.R. 627, 630 (Bankr. S.D. Ga. 2011).

4

The import of § 1322(b)(9) was not raised in Cormier. Section 1322(b)(9) provides that the contents of a proposed Chapter 13 plan *may* "provide for the vesting of property of the estate, on confirmation of the plan or at a later time, in the debtor or in any other entity." "Vesting" has very different implications then "surrendering". So, what the Court must decide now is whether § 1322(b)(9) acts to, as the Debtors put it, "trump" the limitations of § 1325(a)(5). Put another way, may a Chapter 13 debtor vest property (i.e. transfer ownership) in a secured creditor or may s/he merely surrender property (i.e. make a property available) to a secured creditor?

    a. *Conflicting Decisions on Forced Vesting*

In the recent case of In re Sagendorph, 2015 WL 3867955 (Bankr. D. Mass.),[3] Judge Hoffman held that a debtor's plan may provide for forced vesting of property in a secured creditor, although the secured creditor retains its right to object to the plan on the grounds that it was not proposed in good faith. According to the Sagendorph, a plan which proposes to transfer property to a secured creditor fulfills the requirements of § 1325(a)(5)(C) because the debtor's transfer presupposes that the debtor has surrendered the property to the secured creditor. Id. at *4. Further, the Sagendorph decision finds no difficulty in the conflict with Massachusetts law, which does not permit forced vesting. Id. at *4-5. According to the Sagendorph, such state law is preempted by the fresh start policy of the Bankruptcy Code. Id.

---

[3] Conveniently, counsel in the Sagendorph matter are the same as those in this case, and reported that Sagendorph has been appealed to the United States District Court for the District of Massachusetts, where it is in the briefing stage.

5

The Sagendorph decision does not stand alone. Bankruptcy courts in the District of Minnesota and the Eastern District of New York have likewise found that a Chapter 13 plan may vest title in a secured creditor over that secured creditor's objection. In re Stewart, 2015 WL 5138196 (Bankr.D.Minn.) (addressing a plan to which the creditor failed to object, but adopting the reasoning of Sagendorph and finding that § 1322(b)(9) and § 1325(b)(5) may work in tandem to permit forced vesting); In re Zair, 535 B.R. 15 (Bankr.E.D.N.Y. 2015) (holding that a plan may provide for surrender and vesting without the secured creditor's consent).

Other courts have reached a different conclusion: finding that where a plan proposes to vest property in a secured creditor, without that secured creditor's consent, the requirements of § 1325(a)(5) are not met, and the plan may not be confirmed. Bank of New York Mellon v. Watt, 2015 WL 1879680 (D. Or.) (holding that a secured creditor cannot be compelled to take title, and that to force vesting over a secured creditor's objection would impermissibly create a "fourth option" under § 1325(a)(5)); In re Williams, 2015 WL 7776552 (Bankr. D. Ks.) (holding that, although § 1322(b)(9) allows vesting title in a secured creditor, § 1325(b)(5) does not permit confirmation of a plan vesting title in a secured creditor over that creditor's objection); In re Rose, 512 B.R. 790 (Bankr. W.D.N.C. 2014) (holding that a secured creditor cannot be compelled to foreclose or accept a deed and that to allow such a conveyance would subject the secured creditor to unwanted liabilities and impair its state law rights).

*b. The Application of §§ 1325(a)(5) and 1322(b)(9) to the Proposed Amended Plan*

It is against this backdrop that the Court returns to the original question: Does consideration of § 1322(b)(9) alter the analysis of <u>Cormier</u> and permit confirmation of a plan that vests title in an objecting creditor? It does not.

This Court agrees with the conclusion in <u>Sagendorf</u> that §§ 1325(a)(5) and 1322(b)(9) are not in conflict. But for a different reason. Section 1322 "Contents of Plan" is a listing of mandatory and optional provisions that a debtor may propose in his or her plan. Amongst the optional provisions is § 1322(b)(9), allowing a debtor to propose a plan which provides for "vesting of property of the estate, on confirmation of the plan or at a later time, in the debtor or in any other entity." So, for example, a debtor could propose a plan which would vest property in a grantee that has consented (or from whom the debtor plans to seek consent). Or could propose a plan which would vest property in a grantee in the hopes that such party will not object, and that its silence might be deemed consent. What a Chapter 13 debtor may *not* do, however, is substitute the *options* which may be proposed by a plan under § 1322 for *requirements* mandated by § 1325 for confirmation of a plan.

To obtain confirmation, § 1325(a)(5) requires a Chapter 13 plan to treat secured claims in specified ways: (i) the secured creditor may accept the plan; (ii) the debtor may make payments to the secured creditor sufficient to "cram down" the plan; or (iii) the plan may provide for surrender of the property to the secured creditor. The Court has previously held in <u>Cormier</u> that, pursuant to § 1325(a)(5), a plan may not force a secured creditor to take title to its collateral. The Court now clarifies that the provisions of §

7

1322(b)(9) do not alter this conclusion. A plan which "surrenders" property to a secured creditor fulfills the requirements of § 1325(a)(5)(C) and may be confirmed. A plan which "vests" property in a secured creditor does not fulfill the requirements of § 1325(a)(5)(C) and may not be confirmed over that secured creditor's objection. Therefore, the Debtors' Proposed Amended Plan may not be confirmed over the objection of Wells Fargo.

The Court is troubled by the result for these Debtors, for similarly situated debtors and for the communities that have suffered, and continue to suffer, as a result of abandoned properties in the aftermath of the real estate downturn. The Court is cognizant that the Debtors have been left in limbo by Wells Fargo's failure to act. However, this Court also fears that allowing Chapter 13 debtors to actually convey property to their mortgagees over the latter's objection might have the unfortunate result of increasing the risks (and therefore the costs) of lending to such an extent that home mortgage lenders would feel compelled to pass on these costs to consumers generally or reduce the willingness of some lenders to make home mortgage loans altogether.

Nevertheless, the weighing of such competing considerations is the province of legislative and not judicial bodies. As noted in Cormier, judges are interpreters and not architects of the law. Cormier, 434 B.R. at 224; see also, e.g., Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000). This Court is constrained by the dictates of the Bankruptcy Code. And this Court holds that the forced vesting of the Property in Wells Fargo over that lender's objection is inconsistent with the mandatory provisions of § 1325(a)(5).

III.    CONCLUSION

For all of the foregoing reasons, the Court rules that the Proposed Amended Plan may not be confirmed. Wells Fargo's Plan Objection is SUSTAINED and the Debtor's "First Motion to Amend Chapter 13 Plan Post Confirmation" [Docket No. 46] is respectfully DENIED. An order in conformity with this Memorandum shall issue forthwith.

By the Court,

_____
Henry J. Boroff
United States Bankruptcy Judge

Dated: January 13, 2016